FILED

AUG 27 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One white, cardboard box at FBI Office, 7815 North Palm Ave, Suite 302, Fresno, California 93711)

Case No. 1:13 SW - 00233 GSA

SEALED

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

PLEASE SEE ATTACHMENT "A" HERETO AND MADE A PART HEREOF

located in the EASTERN District of CALIFORNIA, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment "B," which is property that constitutes evidence of a commission of a criminal offence or contraband, the fruits of the crime, or thing other criminal possessed or property designed or intended for use which has been used as a means of committing the criminal offence of fraud related to identification documents.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- [x] evidence of a crime;
- [x] contraband, fruits of crime, or other items illegally possessed;
- [x] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1343 | Wire fraud |

The application is based on these facts:
PLEASE SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT CHET M. JOHNSTON

- [x] Continued on the attached sheet.
- [ ] Delayed notice of _____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Chet M. Johnston, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/27/13

City and state: Fresno, California

[signature]
*Judge's signature*

Gary S. Austin, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT OF CHET M. JOHNSTON**

I, Chet M. Johnston, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

I have been employed as a Special Agent of the FBI since December 2008, and am currently assigned to the Sacramento Division, Fresno Resident Agency (RA). As a Special Agent of the FBI, I am currently investigating federal criminal violations related to wire fraud, financial institution fraud, health care fraud, and federal transportation crimes. I have gained experience through training at the FBI Academy and everyday work related to conducting these types of investigations. I was also employed as a Northglenn Police Officer in Colorado for approximately six years prior to joining the FBI.

1) As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

2) I am investigating the activities of SHELLEY DAWN CORKINS (aka SHELLEY DAWN KIMBRELL) during her employment with the law firm, Dowling Aaron, Incorporated (hereinafter referred to as the "firm"), as their Bookkeeper, and later, Accounting Department Manager. CORKINS executed a detailed and deliberate scheme to embezzled hundreds of thousands of dollars from her employer. COKRINS exercised three distinct methods to steal money directly from the general checking account of the firm.

3) As will be shown below, there is probable cause to believe CORKINS' actions caused wire transmissions to be sent across state lines in furtherance of the scheme to defraud, in violation of Title 18, United States Code, Section 1343. I am submitting this

affidavit in support of a search warrant authorizing the search a banker's-style cardboard box containing property believed to belong to CORKINS.

4) The property was removed from her office by her former employer upon her termination on or about May 31, 2012. The box to be searched (hereinafter referred to as the "box" or "banker's-style box") is currently maintained in the evidence control room of the Fresno Resident Agency of the Sacramento Division of the FBI located at 7815 North Palm Ave, Suite 302, Fresno, California 93711, and is more particularly described in Attachment A, attached hereto and incorporated by reference herein. The items, information, and documentation specified in Attachment B hereto, to be seized constitute instrumentalities, fruits, and evidence of the foregoing violation. I am requesting authority to search the entire box and any unlocked containers within, where the items, information, or documentation specified in Attachment B may be found, and to seize all items, information, and documentation listed in Attachment B as instrumentalities, fruits, and evidence of the crime.

5) The statements in this Affidavit are based in part on information obtained through interviews with representatives of the victim firm, affected banks/companies, and witnesses, and on analysis of financial records related to this matter. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of Title 18, United States Code, Section 1343, are presently located within the box of personally owned property.

///

///

## STATUTORY AUTHORITY

6) This investigation concerns alleged violations of Title 18, United States Code, Sections 1343, in which unauthorized electronic transmissions were sent across state lines which caused the transfer, withdrawal or movement of funds from the federally insured bank account of the victim corporation into the possession or accounts of the subject, SHELLEY DAWN CORKINS.

7) Title 18 U.S.C. § 1343 prohibits anyone from devising any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

## SPECIFICS OF SEARCH AND SEIZURE

8) Since the object of this search is believed to be fully comprised of physical items and documents (no digital media expected), the search method to be employed is tactile and visual.

## BACKGROUND OF THE INVESTIGATION

9) On June 14, 2012, SA Johnston participated in a meeting with representatives of the Dowling Aaron, Inc. law firm and the firm's contracted accounting firm, Moore Grider & Company. At the meeting, SA Johnston received a summary account of the allegations against CORKINS. CORKINS was originally hired as a bookkeeper with the firm and eventually promoted to the Accounting Department Manager in/about 2008.

10) According to Firm Administrator Greg Miskulin, CORKINS, as the accounting Department Manager, had access to all of the firm's finances and possessed several privileges, to include a company credit card issued in her name (Visa xxxx-1739) and access to the firm's computerized credit billing software. The firm provide me with evidence indicating CORKINS embezzled over $500,000.00 from the firm through three distinct methods all serving the same purpose between January 2008 and May 2012. The original meeting and ensuing investigation revealed the following:

11) **<u>Method 1:</u>** Per the firm's normal practice, all company credit card bills were to be paid by check. The check was required to be signed by one of the firm partners. Since CORKINS was responsible for receiving and distributing the credit card statements, she removed her own statement before passing out the others to the attorneys. To circumvent the partner's signature on the check, CORKINS paid the bills electronically from the firm's general checking account (see paragraph 14 for interstate nexus) so a check would never be drafted, therefore, her expenses/statements would never be noticed/reviewed. The online payments were lost/hidden in the normal expenses experienced by the firm during the course of business (discussed further in paragraphs 21 and 22). Total loss from this method was calculated at over $198,000.00, comprised of almost 90 online credit card payment transactions.

12) The entire scheme was discovered when an assistant received and reviewed the firm's credit card statements when CORKINS was not around, and saw for the first time that CORKINS was issued a company credit card. With further review it was determined the purchases were not business related.

13) Analysis of CORKINS' company credit card statements revealed egregious amounts of purchases (listed in total) at locations/businesses such as Victoria's Secret

(over $5,000), Target (over $26,000), Sierra Telephone Company (over $4,400), Dish Network (over $3,700) [The firm never subscribed to either Sierra Tel Co. or Dish Network], Hillside Supermarket in Coarsegold, California (over $3,500), Janz Drycleaning (over $4,600), Kidspark (over $2,400), and others.

14) The investigation revealed electronic payments to the Visa cards utilized by the law firm were serviced by Texas Independent Bank Card Service Center (TIB) in Irving, Texas. A representative of TIB stated the bank service center owns and operates their own computer server and web site out of Irving, Texas. Meaning, whenever a customer pays the bill for one of TIB's serviced credit cards online the customer accesses the server in Irving, Texas, regardless of the customer's location.

15) **Method 2:** Representatives of the firm's bank, Premier Valley Bank, believed CORKINS was authorized to make cash withdrawals from the firm's general checking account. Since part of CORKINS' job duties was to manage the firm's petty cash box, she sent numerous email requests for cash to the bank, which in turn, sent the money directly back to CORKINS via courier service.

16) The firm searched the company's email account utilized by CORKINS and located over 200 emailed requests for cash from COKRINS to Premier Valley Bank totaling over $336,000.00.

17) Analysis of several bank accounts belonging to CORKINS revealed numerous cash deposits into her accounts the same day, or the day following a petty cash withdrawal from the firm's account. Many times, a wire transfer from CORKINS' receiving account to another one of her accounts at a different institution occurred the same day as the cash deposit.

18) **Method 3:** CORKINS utilized the proprietary credit card computer software of United Merchant Services (UMS) installed only on her office computer to fraudulently "refund" money electronically to the debit card of her choice. The "refund" ultimately became a deposit in the bank account tied to the debit card (see paragraph 20 for interstate nexus). The software was intended to allow clients to pay attorney fees with a credit card, and allowed the firm to accept credit payment without using a swiping machine. If a client was owed a refund, the funds could be returned to the client using the same software.

19) Analysis of CORKINS' bank accounts and the victim firm's bank accounts identified 38 unauthorized Global Pay debit card charge-backs from the law firm's account directly into one of four of CORKINS' bank accounts at 5 Star Bank.

20) A representative of UMS confirmed that any credit/debit transaction using their Global Payment program, either for a purchase or refund, sends electronic communications across state lines every time. Each payment/refund requires a UMS front-end platform request and a back-end platform settlement which are sent/received in Atlanta, Georgia and Cleveland, Ohio, respectively.

21) Once CORKINS' activities were realized by the firm, they initiated an internal investigation with the assistance of their contracted accounting firm. It was discovered that CORKINS altered the monthly internal bank reconciliation report(s) by withholding outstanding checks - believed to be a method to conceal the stolen funds.

22) Although the accounting firm was unable to explain how CORKINS decided which checks to withhold, they identified 22 separate outstanding checks totaling $119,563.80 dated in June 2011 which were not listed in the reconciliation report. The

checks cleared the bank in July 2011, but did not appear on the July reconciliation either.

23) Upon CORKINS' termination from the firm in May 2012, representative(s) of the firm collected items from CORKINS' office which were believed to be personally owned. The firm made photocopies of numerous documents, receipts, and a debit card which were provided to the FBI along with documentation of their internal investigation. The items were stored in a banker's-style cardboard box by the firm and voluntarily turned over to the FBI in September 2012.

24) The evidence collected during the course of this investigation show that CORKINS utilized her former employer's computer, office space, and time to complete several aspects of the scheme. The investigation indicates that the items removed from CORKINS' former office were directly used in the scheme to steal money from the firm, or revealed where portions of the stolen funds were spent.

///

## CONCLUSION

25) Based on the foregoing, your affiant respectfully submits that there is probable cause to believe that CORKINS has violated Title 18 U.S.C. § 1343, and that the box of items belonging to CORKINS, which was collected from her previously utilized business office and is now located at the Fresno Resident Agency of the Sacramento Division of the FBI located at 7815 North Palm Ave, Suite 302, Fresno, California 93711 (more fully described above and in Attachment A), contains instrumentalities, fruits, and/or evidence of the crime.

26) Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the property described in Attachment A for the items listed in Attachment B.

Chet M. Johnston
Special Agent
Federal Bureau of Investigation

Approved as to form

Christopher D. Baker
Assistant U.S. Attorney

Sworn and subscribed before me this 27 day of August 2013.

UNITED STATES MAGISTRATE JUDGE

**Attachment A**

Property to be Searched

Located at Fresno Resident Agency of the Sacramento Division of the FBI located at 7815 North Palm Ave, Suite 302, Fresno, California 93711:

1. One (1) Box – white cardboard with lid, marked with box manufacturer's name, Datavault, Inc., and logo in blue ink on either side.

**Attachment B**

Items to be searched for and seized

The property to be searched, described in Attachment A, is believed to contain the following items, information, and/or documentation related to events/activities which occurred between January 2008 and May 2012:

1. All business or personal records and documents, including receipts, bank statements, deposit/withdrawal slips, wire/transfer records, cancelled checks, disbursement/reconciliation journals/reports, money orders, cashier's checks/stubs, credit card statements, personal financial/credit records, balance notifications, bills, applications for financing or credit, store cards, membership cards.
2. All financial instruments to include cash, checks/checkbooks, credit cards, debit cards.
3. Documents which depict communication, correspondence, notification, and/or transmission of information related to the activities of the subject, or proceeds derived from the above described schemes.
4. Any information/documentation representing assets or purchases made or secured with funds derived from the schemes described above.
5. Any and all items/documents which may identify persons who acted as facilitators and/or co-conspirators in acts of fraud or related activities in connections with the schemes described above, including correspondence, pictures/photographs depicting an association between co-conspirators, billing records, registrations.

ISSUED

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of California

SEALED

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One white, cardboard box at FBI Office, 7815 North Palm Ave, Suite 302, Fresno, California 93711

Case No. 1:13SW-00233 GSA

COPY

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Eastern District of California *(identify the person or describe the property to be searched and give its location)*:

PLEASE SEE ATTACHMENT "A" HERETO AND MADE A PART HEREOF

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
PLEASE SEE ATTACHMENT "B" HERETO AND MADE A PART HEREOF, which is evidence of violations of Title 18 U.S.C. §1343.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ~~*(not to exceed 14 days)*~~ GSA

☑ in the daytime 6:00 a.m. to 10 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution ~~of the warrant, must prepare~~ an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge ~~Gary S. Austin~~ . GSA
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for ______ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of ______.

Date and time issued: 8/27/13 @ 3:24 pm *Judge's signature*

City and state: Fresno, California — Gary S. Austin, United States Magistrate Judge
*Printed name and title*

AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

______________________________
Executing officer's signature

______________________________
Printed name and title

**Attachment A**

Property to be Searched

Located at Fresno Resident Agency of the Sacramento Division of the FBI located at 7815 North Palm Ave, Suite 302, Fresno, California 93711:

1. One (1) Box – white cardboard with lid, marked with box manufacturer's name, Datavault, Inc., and logo in blue ink on either side.

# Attachment B

## Items to be searched for and seized

The property to be searched, described in Attachment A, is believed to contain the following items, information, and/or documentation related to events/activities which occurred between January 2008 and May 2012:

1. All business or personal records and documents, including receipts, bank statements, deposit/withdrawal slips, wire/transfer records, cancelled checks, disbursement/reconciliation journals/reports, money orders, cashier's checks/stubs, credit card statements, personal financial/credit records, balance notifications, bills, applications for financing or credit, store cards, membership cards.
2. All financial instruments to include cash, checks/checkbooks, credit cards, debit cards.
3. Documents which depict communication, correspondence, notification, and/or transmission of information related to the activities of the subject, or proceeds derived from the above described schemes.
4. Any information/documentation representing assets or purchases made or secured with funds derived from the schemes described above.
5. Any and all items/documents which may identify persons who acted as facilitators and/or co-conspirators in acts of fraud or related activities in connections with the schemes described above, including correspondence, pictures/photographs depicting an association between co-conspirators, billing records, registrations.